UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re                                                                  Chapter 13
Geoffrey G. Crego and                                      Case No. 07-22747-svk
Kimberly M. Crego,
                    Debtors.

**Memorandum Decision on Trustee's Objection to Confirmation**

The Chapter 13 Trustee has objected to confirmation of the Debtors' plan on the grounds that the Debtors are not contributing all available disposable income to pay unsecured creditors. This case explores whether married debtors living in separate households can deduct the expenses of both households as a special circumstance under the means test.

**Facts**

Geoffrey and Kimberly Crego ("Debtors") filed a joint Chapter 7 petition on April 16, 2007. After the U.S. Trustee moved to dismiss their case as an abuse of the provisions of Chapter 7, the Debtors converted the case to Chapter 13. On the date of the petition, the Debtors were married. However, they have been living in separate households since June 2006, and they filed for divorce on or about February 12, 2007.

According to their Form B22C "Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income," the Debtors' combined monthly income is $9,031.46. When annualized this income exceeds Wisconsin's median family income for their family size.[1] Accordingly, the Debtors must complete the expense portion of Form B22C to calculate the disposable income to be paid into their Chapter 13 plan. The Debtors' deductions for their living expenses, secured debt payments and Chapter 13 administrative expenses on

---

[1] The Debtors have one child. Their annualized income is $108,377.52, and the applicable median family income for a family of three is $63,266.

Lines 24 through 51 total $7,667.09. Subtracted from the income, the monthly disposable income on line 58 is $1,364.37. However, on line 59 under "additional expense claims," the Debtors deducted an additional $1,695 for the separate household expenses the Debtors incur.[2] The deduction of the separate household expenses results in a negative number for disposable income, and the Debtors' plan proposes to pay no dividend to unsecured creditors. The Trustee objected to confirmation, claiming that the separate household expenses are not properly deductible in determining projected disposable income. The Debtors argue that the divorce and separate household qualify as special circumstances and that therefore the documented expenses can be deducted.

## Analysis

For Chapter 13 debtors with current monthly income above the state median for their household size, disposable income is defined as a debtor's current monthly income under 11 U.S.C. § 101(10A) less amounts reasonably necessary to be expended as determined by 11 U.S.C. § 707(b)(2)(A) and (B). *See* 11 U.S.C. § 1325(b)(3). Section 707(b)(2)(B) provides for the consideration of "special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that [*sic*] justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative." 11 U.S.C. § 707(b)(2)(B)(i).

In order to justify "special circumstances," a debtor must "itemize each additional expense or adjustment of income" and provide a detailed explanation of its reasonableness and necessity. 11 U.S.C. § 707(b)(2)(B)(ii). The debtor must also "attest under oath to the accuracy of any information provided to demonstrate that additional expenses or adjustments are

---

[2] The additional expenses are itemized as $1,395 as a separate household expense for rent and food, $125 for electricity, $25 for water/sewer, and $150 for telephone and cable service.

2

required."[3]  11 U.S.C. § 707(b)(2)(B)(iii).  Beyond the special circumstances expressly described in the statute, i.e., a serious medical condition or active duty in the Armed Forces, "debtors with lost jobs, domestic relations problems, children in trouble, natural disasters, [and] car wrecks" may qualify. *See* Keith M. Lundin, *Chapter 13 Bankruptcy, 3d Edition* § 478.1 (2000 & Supp. 2007).  Judge Lundin points out that "special circumstances is not as harshly worded as barriers and exceptions elsewhere in the Bankruptcy Code," such as undue hardship under § 523(a)(8). *Id*.

At least for above-median debtors, the BAPCPA amendments to Chapter 13 redefine disposable income to mirror the outcome under the Chapter 7 means test.  At least one court has compared the application of the § 707(b)(2) means test in Chapter 7 and Chapter 13, explaining: "[b]oth tests begin with current monthly income…and permit the same expenses.  The difference between the two determines, in a chapter 7 case, whether a presumption of abuse arises or, in a chapter 13 case, the amount of disposable income.  Both tests have the purpose of conditioning bankruptcy relief on payment of unsecured debts to the extent of a debtor's ability, and their calculations…yield substantially the same result -- disposable income in a chapter 13 case and 'monthly available income'…in a chapter 7 case….although § 707(b)(2) does not use the term 'disposable income,' the end result of its calculation is substantially the same as 'disposable income' in a chapter 13 case." *In re Knight,* 370 B.R. 429, 434 (Bankr. N.D. Ga. 2007).

The court in *Knight* ultimately held that the § 707(b)(2)(B) special circumstances analysis should have the same effect in both chapters. *Id.*  "In chapter 7, subparagraph (B) permits downward adjustments due to special circumstances to enable a debtor to avoid the presumption of abuse.  As such, it recognizes that money for expenditures necessitated by special circumstances is not available to pay unsecured creditors.  In a chapter 13 case, money for

---
[3] The Debtors have supported their calculations with affidavits.

3

expenditures required by special circumstances is no more available to make payments to unsecured creditors than it is in a chapter 7 case. Consequently, disposable income may be adjusted downward to take account of them." *In re Knight*, 370 B.R. at 435-36. This Court agrees that cases examining special circumstances in Chapter 7 cases apply equally in this Chapter 13 case.

Several courts have evaluated whether separate households constitute special circumstances under the means test. *See In re Graham,* 363 B.R. 844 (Bankr. S.D. Ohio 2007); *In re Crabtree*, 2007 Bankr. LEXIS 3581 (Bankr. D. Mont. Oct. 12, 2007); and *In re Armstrong*, 2007 Bankr. LEXIS 1812 (Bankr. N.D. Ohio May 24, 2007). In *Graham,* the court held that the maintenance of two separate households because of employment issues amounted to special circumstances sufficient to rebut the presumption of abuse. 363 B.R. at 847. In *Crabtree,* the Chapter 13 debtors were married and maintaining separate homes because of irreconcilable marital differences, but could not afford to file for divorce. The court held that it was reasonable for the debtors to maintain separate households and such instance is the exact "type of circumstance contemplated by § 707(b)(2)(A)." *In re Crabtree,* 2007 Bankr. LEXIS 3581, at *16. The debtors in *Armstrong* resided in separate households because of a legal separation and the court held such a situation constitutes a "special circumstance not faced by the ordinary family," and produces expenses for which there are no reasonable alternatives. 2007 Bankr. LEXIS 1812, at *13. Upon comparing the debtors' situation with the examples of special circumstances provided for in the statute, the court in *Armstrong* found that marital separation "presents the high probability of having every bit as devastating an impact on family life and finances as serious illness and military deployment." 2007 Bankr. LEXIS 1812, at *14.

4

This Court concurs that the Debtors' separation and post-petition divorce demonstrates special circumstances in this case. The Debtors have stated under oath that they are unable to live amicably together and have provided proof that they have filed for divorce. There is no suggestion that the Debtors' separate living situation is a scheme to avoid the application of the means test. Unlike a debtor who failed to show that expenditures on restaurants and fast food were necessary for his health, welfare and production of income, the Debtors in this case have demonstrated that marital separation is a special circumstance that justifies additional expenses and the downward adjustment of disposable income. *See In re Tuss,* 360 B.R. 684 (Bankr. D. Mont. 2007). The Debtors have established that they lack any reasonable alternative to the option of incurring these expenses on a monthly basis, as continued cohabitation may burden the family and jeopardize the welfare of their child.

Trustees frequently object to such "double" expenses as are claimed here on the grounds that special circumstances must be outside the debtor's control. *See, e.g., In re Graham*, 363 B.R. at 847. However, as the court in *In re Graham* explains, nothing in the Code requires that special circumstances are beyond the debtor's control. *Id*. The existence of a special circumstance is subject to the discretion of the court, provided that the debtor documents the expense, explains why it is necessary and reasonable, attests to its accuracy, and the adjustment causes the abuse presumption to fail. 11 U.S.C. § 707(b)(2)(B). Of course, in any of these cases, a trustee's objection could be overcome by having the spouses file separate petitions. However, "machinations" such as forcing the Debtors to pay a second filing fee, file another set of schedules and plan, and arrange a new set of hearings "elevates form over substance." *In re Crabtree*, 2007 Bankr. LEXIS 3581, at *16; *see also In re Graham*, 363 B.R. at 850. In this case, the Court does not find that the circumstances necessitate forcing either of the Debtors to

file separate petitions, as separation of the cases would not make more money available to the unsecured creditors than there is in this joint case. In fact, there may well be less money available due to the expenses incurred in filing a second petition.

Having concluded that separate households due to divorce or legal separation may constitute special circumstances, the Court is cognizant that the expenses of the separate household must be "reasonable." 11 U.S.C. § 707(b)(2)(B)(II). For example, while a second residence may be necessary due to a pending divorce, a luxury condominium and extravagant expenses probably would not qualify as reasonable. Applying the National and Local Milwaukee Standards for a household of one person results in total expenses of $1,610.[4] The Debtors here have claimed $1,695. Their "special circumstances" expenses will be limited to the amounts provided in the National and Local Standards. Moreover, the deductions for food, housing and utilities on Lines 24, 25A and 25B of Form B22C should not be based on a household of three persons as the Debtors have claimed, but rather must be based on a household of two. Accordingly, the Debtors' deductions should be reduced from $1,368 to $1,306 on Line 24; $402 to $342 on Line 25A; and $836 to $712 on Line 25B. These reductions total $246, increasing the Debtors' monthly disposable income on Line 58 to $1,610. Coincidentally, the amount of "reasonable" special circumstances expenses under the National and Local Standards is also $1,610, resulting in no projected disposable income being available to the unsecured creditors in this case.

## **Conclusion**

The expenses of a second household can constitute special circumstances under § 707(b)(2)(B) of the Bankruptcy Code, but those expenses must be reasonable, and accordingly

---

[4] This is the total amount allowed as of April 2007 for a debtor with current monthly income of $2,900, the lower income of the two Debtors in this case.

are limited to the appropriate National and Local Standards for the separate household. Moreover, if the Debtors are separated with one child, they cannot claim a household size of three for purposes of the living expenses on Lines 24 and 25 of the Form B22C, and in addition claim expenses of a separate household as a special circumstance. In this case, making the applicable adjustments does not result in any disposable income being available to the unsecured creditors. The Chapter 13 Trustee's Objection to Confirmation of the Chapter 13 Plan is overruled, and the plan may be confirmed.

Date: April 2, 2008

By the Court:

Susan V. Kelley
U.S. Bankruptcy Judge

7